# Applicability of 18 U.S.C. § 431 to Limited Partnership Interests in Government Leases

A modified version of the proposed real estate transaction described in the February 17, 1998 opinion that gives the blind trusts no interest in any government contracts is permissible under 18 U.S.C. § 431

March 13, 1998

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
GENERAL SERVICES ADMINISTRATION

This memorandum responds to your March 4, 1998 follow-up letter regarding our February 17, 1998 opinion on the applicability of 18 U.S.C. §§ 431–433 (1994) to the interests of two Members of Congress in government contracts under a proposed real estate transaction.[1] In your letter, you raise the question whether a modified version of the transaction, as described by counsel for the interested entities, would be permissible under 18 U.S.C. § 431.[2] We conclude that the modified transaction as described by counsel would not violate 18 U.S.C. § 431.

Our February 17 opinion addressed several variations of a proposed transaction under which certain entities would contribute their assets to a limited partnership (the "Operating Partnership"), the sole general partner of which is a real estate investment trust (the "REIT"), in exchange for cash and preferred partnership units ("OP Units") in the Operating Partnership. Six of these entities (the "MOC Entities") are owned by trusts in which two Members of Congress have beneficial interests; none of the MOC Entities currently holds any contracts with the Federal Government. Two entities, however (the "non-MOC Entities"), have current leases with federal agencies. The contribution of the non-MOC Entities' assets to the Operating Partnership has prompted the question whether the proposed transaction would give the Members of Congress interests in Government contracts in violation of 18 U.S.C. § 431.

In our February 17 opinion, we concluded that the unmodified proposed transaction would be prohibited by § 431 because of two features of the OP Units to be received by the MOC Entities (and hence the trusts) under the transaction. First, the preferred distribution rights in the OP Units would be ownership interests in the Operating Partnership, and thus in the Government contracts held by the Partnership. See 22 Op. O.L.C. at 35–36. And second, the right to convert the

---

[1] See Applicability of 18 U S C. §§ 431–433 to Limited Partnership Interests in Government Leases Under Proposed Transaction, 22 Op O L C 33 (1998).

[2] See Letter for Emily Hewitt, General Counsel, General Services Administration, from Francis L. Coolidge, Ropes & Gray (Mar 3, 1998) ("Coolidge Letter III") As with our February 17 opinion, the facts outlined in this memorandum derive from information provided by you and by counsel for the entities that would contribute assets under the transaction To the extent that additional facts are relevant, but have not been described to us, our conclusion could change See 22 Op O L.C. at 33 n 2

41

OP Units into common units of the Operating Partnership, and ultimately into shares of the REIT, would itself be a prohibited ownership interest in the Government contracts under § 431. *Id.* at 36.

Under the proposed modified transaction, the trusts, through the MOC Entities, would receive a discrete, alternate class of preferred partnership units in the Operating Partnership ("Alternate OP Units") rather than the OP Units. The face value of the Alternate OP Units would be based on the fair market value of the MOC Entities' assets, which do not include any Government contracts, and the distribution rate would be set at a fixed percentage of the face value.[3] Holders of the Alternate OP Units would be excluded from any benefit derived from any Government contracts held, or to be held, by the Operating Partnership. In particular, distributions made to holders of the Alternate OP Units would be reduced from the stated amount to the extent that the revenues of the Operating Partnership less any gross revenues from Government contracts were insufficient to make those payments; in addition, revenues from Government contracts would be segregated so that distributions to Alternate OP Unit holders, in all cases clearly would be made only from revenues not derived from Government contracts. *See* Coolidge Letter III, at 2. As noted in our February 17 opinion, this modification ensures that the trusts do not benefit from any Government contracts in the distributions for the units—either through the receipt of actual revenues generated by the Government contracts or through the receipt of funds that would not have been paid but for those contracts. *See* 22 Op. O.L.C. at 36 n.10. Thus, the proposed modification avoids the first problem identified in our opinion by eliminating the ownership interests in the Operating Partnership's Government contracts by virtue of limited partnership distributions.

Under the proposed modified transaction, the Alternate OP Units also would have no rights of conversion into either common units of the Operating Partnership or shares of the REIT. Instead, the Alternate OP Units would be redeemable by the owners solely for cash in the amount of their face value, and would be unilaterally called, at face value, by the Operating Partnership a fixed number of years after the transaction occurs. *See* Coolidge Letter III, at 2. Because the proposed modification eliminates the conversion-right feature of the OP Units, it avoids the second problem identified in our February 17 opinion.

---

[3] *See* Coolidge Letter III, at 1–2; Letter for Emily Hewitt, General Counsel, General Services Administration, from Francis L. Coolidge, Ropes & Gray (Mar. 12, 1998) ("Coolidge Letter IV") Although the distribution rate of the Alternate OP Units would be higher than that to be earned by the OP Units, counsel for the entities advises that higher rate reflects solely the lack of conversion rights in the Alternate OP Units and does not in any way reflect compensation for the value of Government contracts held, or to be held, by the Operating Partnership. *See* Coolidge Letter IV. Thus, neither the face value nor the distribution rate of the Alternate OP Units reflects the value of Government contracts. *Id*

As modified, therefore, the proposed transaction would not give the trusts any interest in Government contracts, and it would not be prohibited by § 431.

BETH NOLAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*